AO 91
Rev. 11/97                          **CRIMINAL COMPLAINT**                    **ORIGINAL**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>SEBASTIAN MARTINEZ COVARRUBIAS | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>08-  **08-2321M** |

FILED
CLERK, U.S. DISTRICT COURT
SEP 29 2008
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

Complaint for violation of Title 26, United States Code, Section 5861(d)

| NAME OF MAGISTRATE JUDGE<br>HON. CAROLYN TURCHIN | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, CA |
|---|---|---|
| DATE OF OFFENSE<br>September 27, 2008 | PLACE OF OFFENSE<br>Santa Barbara County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about September 27, 2008, in Santa Barbara County, within the Central District of California, defendant SEBASTIAN MARTINEZ COVARRUBIAS knowingly possessed a firearm, namely, a Molotov cocktail destructive device, which firearm was not, in fact, registered to him in the National Firearms Register and Transfer Record as required pursuant to the National Firearms Act.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
  (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: n/a

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Joshua M. Rusk<br>OFFICIAL TITLE<br>SPECIAL AGENT–ATF |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br>September 29, 2008 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
AUSA: Mark Aveis, 213-894-4477          REC: DETENTION (WARRANT)

AFFIDAVIT

I, Joshua M. Rusk, being duly sworn, hereby depose and state:

BACKGROUND

1. I am a Special Agent ("SA") of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed for approximately nine years and five months. Prior to that time, I was employed as a Special Agent of the United States Postal Service, Office of Inspector General, for approximately eleven months, and as a Special Agent of the United States Department of Education, Office of Inspector General, for approximately fifteen months. My training as a Special Agent includes completing the basic nine-week Criminal Investigator program at the Federal Law Enforcement Training Center ("FLETC"); the 13-week ATF New Professional Training for Special Agents; the FLETC Firearms Instructor Program and Firearms "Simunitions" Instructor Course; the ATF International Post-Blast Investigation School, ATF International Firearms Trafficking School, and ATF Southwest Border Firearms Trafficking School; the Ventura County Sheriff's Department Advanced Surveillance Course; the FLETC Office of Inspector General Academy; and the FLETC Continuing Legal Education Course. I received a Bachelor of Arts degree in Criminal Justice from Texas State University in San Marcos, Texas. During my employment as an SA of the ATF, I have participated in numerous investigations for violations of federal

1

and state firearms and narcotics laws. I have been a participant in, and the affiant of, numerous affidavits for search and arrest warrants for various violations of federal and state laws and regulations relating to narcotics, firearms, explosives, and arson. I am currently assigned to the ATF Santa Maria Satellite Office.

2. This affidavit is made in support of a complaint and request for the issuance of an arrest warrant charging SEBASTIAN MARTINEZ COVARRUBIAS, aka "Seabass," aka "Sebos," ("COVARRUBIAS") with a violation of 26 U.S.C. § 5861(d), possession of a firearm, namely, a Molotov cocktail, which is not registered to him in the National Firearms Registration and Transfer Record.

3. The information contained in this affidavit is based on statements made and evidence presented to me by members of the Santa Barbara Police Department ("SBPD"), as well as my own knowledge of certain matters described herein. This affidavit is intended to show that there is probable cause for a complaint and the requested arrest warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

PROBABLE CAUSE

4. On September 27, 2008, I spoke with SBPD Detective Gary Siegel. I have known and worked with Det. Siegel for several years and know that he is assigned to investigate street gangs in Santa Barbara. I know that he has qualified as an expert witness in Santa Barbara Superior Court regarding street gangs in Santa Barbara and that he has interviewed hundreds of gang members and

has been involved in numerous investigations of gang crimes. He told me the following:

    a. Two rival street gangs in Santa Barbara are known as the "Eastside" and "Westside" gangs. Members and associates of the two gangs are responsible for dozens of crimes, including murders, assaults with deadly weapons, and robberies, committed against rival gangsters and innocent civilians. From law enforcement contacts with COVARRUBIAS, including his September 2005 arrest and later conviction for assault with a deadly weapon, SBPD gang officers know that COVARRUBIAS affiliates with members and associates of, and claims allegiance to, the Eastside gang.

    b. On September 26, 2008, at approximately 11:24 p.m., SBPD received calls from residents in the area of Gutierrez St. at 400 De La Vina St., Santa Barbara, California, regarding gun shots heard in connection with a large, in-progress, gang fight at that intersection. Upon arrival, SBPD officers found that all participants had fled. Officers found numerous spent .22 caliber shell casings, a few non-spent .22 caliber bullets, and blood droplets in the area of the reported fight. Several of the spent casings were found in front, and one in the driveway, of COVARRUBIAS' residence located at 408 De La Vina St, adjacent to the area where the altercation had been reported. Officers also found what appeared to be remnants of a Molotov cocktail, namely, officers found a broken beer bottle lying in the area of a liquid which resembled lighter fluid. An investigating SBPD

3

officer saw COVARRUBIAS standing outside of his property.

   c. Shortly after the altercation had been reported, SBPD officers learned that two known Westside gang members, Abraham Fernandez and Jonathan Castro, had recently arrived at the emergency room of a local hospital, each with .22 caliber gunshot wounds. Fernandez had a gunshot wound to the abdomen. He was in surgery and was not available for an interview. Castro had a through-and-through gunshot wound to his nose. He was uncooperative in the interview. He claimed to have been on Mission Street in Santa Barbara (which was not in vicinity of the reported gun shots or COVARRUBIAS' residence) and said that he was struck by an unknown person with an unknown object. He refused to give specifics. SBPD gang officers commonly encounter gangsters who are uncooperative with law enforcement officers seeking information about gang-related crimes. However, SBPD officers received statements of non-gang member witnesses at the scene who stated that, during the course of the reported gang fight, an unidentified individual approached the fighting group with a rifle and began shooting at persons in the group. Several witnesses identified COVARRUBIAS as involved in the fight.

   d. COVARRUBIAS was then detained and transported to the SBPD police station. He was advised of, and waived, his Miranda rights. He claimed that he had no knowledge of the altercation or shooting.

   e. On September 27, 2008, SBPD officers obtained a search warrant from a Santa Barbara County Superior Court judge

for COVARRUBIAS' residence at 408 De La Vina St. SBPD officers searched his residence and found a .22 caliber rifle under the house in an exterior vent. The rifle had an un-spent "stove-piped" round in the chamber. A "stove-piped" round is a round that has been lodged, typically at an angle, in the area of the breach of the firearm, instead of parallel with and resting in the firing chamber, thus causing the firearm to jam and not fire.

  f. SBPD officers also found during the search of COVARRUBIAS' residence a "Molotov" cocktail, in the form of a beer bottle filled with lighter fluid with an ignition rag partially soaked in the fluid and partially extending out the top of the bottle. The beer bottle and fluid were similar to the broken beer bottle found during the above-referenced crime scene investigation.

  g. COVARRUBIAS was then re-interviewed at which time he stated that he was an Eastside gang member and that, while standing to the front of his property with a fellow gangster, Jesus Martinez, a large group of Westside gang members arrived and challenged him to a fight. At this point, COVARRUBIAS said that fellow gangster Jesus Martinez, whom SBPD gang officers know is a member of the "Traviesos" sub-clique of the Eastside gang, took the .22 caliber rifle found at COVARRUBIAS' residence, and began shooting at the Westside gang members. As they fled, Jesus Martinez chased them and continued to shoot at them. COVARRUBIAS admitted that he had made Molotov cocktails and claimed that he had made them for protection from Westside gang members.

5. I know from my training and experience that, pursuant to 26 U.S.C. § 5845(a)(8), a "firearm," for which registration is required in the National Firearms Registration and Transfer Record, includes a "destructive device." Pursuant to 26 U.S.C. § 5845(f), "the term 'destructive device' means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, . . . (F) or similar device . . ." Based upon my training and experience, I know that a Molotov cocktail, of the type described herein, is a "destructive device," and, hence, a "firearm," which is subject to registration with the National Firearms Registration and Transfer Record. See also, United States v. Greer, 588 F.2d 1151, 1157, n. 8 (6th Cir. 1978), cert. denied, 440 U.S. 983 (1979) ("[W]hile gasoline, bottles, and rags may all be legally possessed, their combination into the type of home-made incendiary bomb commonly known as a Molotov cocktail creates a destructive device")(internal quotation marks omitted); United States v. Simmons, 83 F.3d 686 (4th Cir. 1996)(no defense to possession of Molotov cocktail where defendant did not at the time possess a match with which to ignite the cocktail). I also know from my training and experience that a firearm, including a destructive device, cannot be so registered absent a serial number. I also know that the subject Molotov cocktail lacked a serial number and, therefore, will not show as registered to COVARRUBIAS in the National Firearms Registration and Transfer Record. Furthermore, on September 29, 2008, ATF Compliance Investigator Lance Yoshioka, whom I know is charged with

searching the National Firearms Registration and Transfer Record, told me that there is no record of COVARRUBIAS having registered any Molotov cocktail withe the National Firearms Registration and Transfer Record.

6. Based on the foregoing, I believe there is probable cause to believe that SEBASTIAN MARTINEZ COVARRUBIAS, aka "Seabass," aka "Sebos," committed a violation of 26 U.S.C. § 5861(d)), possession of a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

Joshua M. Rusk
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

SUBSCRIBED TO AND SWORN BEFORE ME
THIS 29th DAY OF September 2008

UNITED STATES MAGISTRATE JUDGE