1 | MATTHEW J. LOMBARD
Attorney at Law
2 | California Bar No: 239910
2115 Main Street
3 | Santa Monica, CA  90405
Tel: (310) 399-3259
4 | Fax:(310) 392-9029
mlombard@lombardlaw.net
5
Attorney for Defendant
6 | MIGUEL PARRA

7

8

          UNITED STATES DISTRICT COURT

9
          CENTRAL DISTRICT OF CALIFORNIA
10

11 | UNITED STATES OF AMERICA,        )   Case No.  CR-08-1191-GW
                                   )
12 |         Plaintiff,              )   DEFENDANT MIGUEL PARRA'S
                                   )   SENTENCING MEMORANDUM
13 |    v.                           )
                                   )   Date:    May 27, 2010
14 | MIGUEL PARRA, et al.,            )   Time:    8:00 AM
                                   )
15 |         Defendant.              )
                                   )
16                                   )
   | _____ )
17

18

19      The defendant, MIGUEL PARRA, by and through his counsel of record,

20 Matthew J. Lombard, hereby submits the accompanying position paper regarding

21 sentencing factors.

22

23 Dated:       May 20, 2010

24                                         /S/
                                 Matthew J. Lombard
25                                  Attorney for Defendant
                                 MIGUEL PARRA
26

27

28

## I.    INTRODUCTION

Miguel Parra is a young man who dreams of making a home and a life for his young son, who was born just weeks before his arrest in this case. He wants to make sure that his son has a father to help guide him through his childhood and especially through the teen years that were so difficult for him. He shows pictures of his son to everyone he meets and corresponds with the mother of his child through the Corrlinks e-mail service provided at MDC. He was 20 years old when he was arrested in this case. His twenty-first and twenty-second birthdays came and went while he was in custody at MDC.

The angry young teenager who turned to the Eastside gang for identity and a sense of belonging is maturing into a thoughtful young man who embraces the need to plan for his future and build a life to be proud of—one that will not bring him back in front of this Court or any other court.

### A.    The Charges and Plea

Miguel Parra was one of twenty-eight defendants charged in the Indictment in this case which alleged a RICO conspiracy and thirty other counts. The overt acts alleged in the Indictment reach all the way back to 1993 when Miguel Parra was only 5 years old.

Miguel Parra is named in Count One (RICO), Count Twenty (Conspiracy to Distribute Cocaine) and Count Thirty-One (Criminal Forfeiture). He is not named in any substantive counts, but he is mentioned in several overt acts. He pled guilty to County Twenty and admitted to assisting in the distribution of twenty-eight grams of cocaine on January 31, 2008 and twenty-five grams of cocaine on

September 2, 2008[1].

**B.    The PSR Recommendation**

The Probation Officer's Offense Level calculations mirror those envisioned by the Plea Agreement between the parties.   From Base Offense Level 18, which was based on the Drug Quantity Table (2D1.1) two levels were deducted for Role in the Offense and then three levels for Acceptance of Responsibility.  This calculation resulted in a  Total Offense Level of 13.

The Probation Officer calculated Miguel Parra's Criminal History Category to be Category VI.

Level 13 in Criminal Category VI results in a recommended sentencing range of 33-41 months and the Probation Officer recommended a sentence at the low end, that is 33 months in custody.

**C.   The Government's Position**

The Assistant United States Attorney filed position papers stating that the Government agrees with the calculation in the PSR and concurs in the recommended 33 month sentence.

**D.    Defendant's Position**

Miguel Parra agrees with the PSR's Offense Level 13 calculation. However, he argues that Category VI is a substantial over representation of his criminal history which controverts the intent of the Sentencing Commission. Miguel Parra argues that his Criminal History is more correctly calculated at Criminal History Category III.   Level 13, Criminal History Category III suggests a

---

[1] A number of undercover purchases of cocaine and heroin were made during this investigation.  It bears mention that Miguel was apparently going to sell 28 grams of cocaine to an informant on January 31, 2008, but he could not find the keys to the vehicle where apparently the cocaine was stored.  On September 2, 2008, it is undisputed that his brother, Ismael, also a defendant in this case, sold 25 grams of cocaine to the informant.  Miguel was in the vehicle with his brother when Ismael finalized the transaction and admits to assisting his brother.

sentencing range of 18-24 months.

Miguel Parra has been in custody since October 15, 2008, that is, on the date of his sentencing hearing he will have been in federal custody for just over 19 months.

## II.

## CRIMINAL HISTORY CATEGORY VI SUBSTANTIALLY OVER REPRESENTS THE SERIOUSNESS OF MIGUEL PARRA'S CRIMINAL HISTORY AND A DOWNWARD DEPARTURE IS WARRANTED.

The Introductory Commentary to Chapter Four - Criminal History and Criminal Livelihood (4A1.1 et seq.) states in pertinent part:

> A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment...Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation. ... The specific factors included in §4A1.1 and 4A1.3 are consistent with the extant empirical research assessing correlates of recidivism and patterns of criminal behavior.  While empirical research has shown that other factors are correlated highly with the likelihood of recidivism, e.g. age and drug abuse, for policy reasons they were not included here at this time.

The Probation Department's calculation of Miguel Parra's Criminal History Category resulted in a total of 14 points.  Thirteen points places a defendant in Criminal History Category VI, the highest available level and the level at which a defendant can be adjudged to be a Career Offender, providing that defendant has suffered at least two prior felony convictions of a crime of violence and/or a crime involving controlled substances.

Additional reference is made to Miguel Parra's criminal history calculation in the following sentences found in the cover letter to the PSR:  "Although he is in criminal history category VI, many of his prior convictions did not receive any criminal history points. The defendant's criminal history category is the result of continuous pattern of serious offense, [sic] all of which have occurred within the

4

past seven years." It would appear from this comment that the PSR is suggesting that Miguel Parra's criminal history should actually be calculated higher than the 14 points which have been assigned to him.

When the Court reviews the cases of convictions and the point assessment that was used to calculate the criminal history in this case, it will be clear that the methodology enunciated in the Guidelines results in a very skewed portrait of a young defendant such as Miguel Parra.

First, the conduct which has been scored (and not scored, as the PSR recommendation letter points out) begins when Miguel is 15-1/2 years old. When he was arrested in this case he was still a few months shy of his twenty-first birthday. So the criminal conduct that calculates into more than sufficient points to qualify him as a Career Offender is based on a series of conduct that occurred in a period of time just over 5 years.

**2003 - Age 15**

Miguel Parra was arrested in possession of a billy club in May 2003.[2] He was placed on informal probation, which he violated when he was arrested in September 2003 for driving without a license and providing false information to a peace officer. (He identified himself to the police office with his older brother's driver's license.) As a result of violating probation a mere two months after its commencement, he was sentenced to "camp placement." Two months later, in December 2003, he was involved in a gang related fight at the camp. For that offense he was sent to juvenile hall for 30 days and then returned to camp. He continued in camp until he was released in March 2005.

These three incidents, which all occurred in the span of seven months at the age of 15, netted a total of six points in the criminal history calculation. The six

---

[2] This is arrest and conduct is the same as reflected in Miguel's first over act in the Conspiracy.

points assigned for this conduct immediately jumps him into Criminal History Category III. If Miguel had not accrued any additional points between these 7 months in 2003 and his arrest on the current Indictment, he would be Criminal History Category III. An adult defendant who had been convicted of a violent felony and served a long prison sentence would theoretically score three points and consequently qualify at a lesser Criminal History Category (Category II) than fifteen year old Miguel Parra.

There are other debatable points here which serve to highlight the marginal nature of the manner in which this conduct fits into the Guideline definitions:

(a) *The date of May 10, 2003 was used as the relevant conduct date for the purpose of determining points*. Section 4A1.2(a)(1) defines "prior sentence" as "any sentenced previously imposed...for conduct not a part of the instant offense." The PSR argues that May 10, 2003 is the earliest date to determine relevant conduct because it is the earliest alleged overt act involving Miguel. Indictment, Count One, OA 15[3]. The first conduct which scores two points in this calculation is the May 10, 2003 arrest. These two points should not be counted because his conduct, possession of a billy club, revolves around the same conduct that is mentioned in Over Act 15 of the indictment.

(b) *The May 10, 2003 arrest and subsequent conviction was scored as two points because it was deemed to be "a prior sentence of imprisonment of at least sixty days" [4A1.1(b)] and as an offense committed prior to age eighteen it was "a juvenile sentence to confinement of at least sixty days if the defendant was released from confinement within five years of his commencement of the instant offense." [4A1.2(d)(2)(A)]* As mentioned above, Miguel's first arrest (May 10, 2003) is recognized in the PSR as relevant conduct not part of the offense. So any and all of Miguel's criminal conduct will meet the qualifying definition of "within

---

[3] The overt acts were re-alleged in subsequent counts, including Count Twenty, which is the Count to which Miguel Parra pled guilty.

five years of his commencement of the instant offense." Still, it is possible that this arrest/conviction would have merited one point instead of two, if he had successfully finished his probation term. The PSR may think that confinement includes "camp placement" which is why the PSR assigns a two point score to this conduct.

(c) *The September 3, 2003 arrest and subsequent conviction was scored as two points because it was deemed to be "a prior sentence of imprisonment of at least sixty days" [4A1.1(b)] and as an offense committed prior to age eighteen it was "a juvenile sentence to confinement of at least sixty days if the released from confinement within five years of his commencement of the instant offense." [4A1.2(d)(2)(A)]* As mentioned above, any and all of Miguel's criminal conduct will meet the qualifying definition of "within five years of his commencement of the instant offense." This conduct (unlicensed driver and false info to a peace officer) is included in the list of offenses that are often excluded from the criminal history calculation. [4A1.2(c)(1)] These offenses are only included if the probationary term was more than one year or the term of imprisonment was at least 30 days. Since this conduct was conduct that formed the basis of a probation violation, the sentence imposed for this conduct was more severe than the norm. Miguel Parra was already identified as a young gang member and this was his second juvenile arrest in a short period of time, so he was placed in camp. Camp, no doubt, qualifies under the definition of "confinement" so this conduct which is often excluded completely from criminal history calculations, received a score of two points.

(c) *The December 6, 2003 arrest and subsequent conviction was scored as two points because it was deemed to be "a prior sentence of imprisonment of at least sixty days" [4A1.1(b)] and as an offense committed prior to age eighteen it was "a juvenile sentence to confinement of at least sixty days if released from confinement within five years of his commencement of the instant offense."*

7

*[4A1.2(d)(2)(A)]* Three months after being placed in camp, Miguel was involved in a fight at the camp. He was charged, sentenced to juvenile hall for 30 days and then back to camp placement. These two points are kind of like double credit, because he was already in camp placement. Essentially two points are being added into his score for a fight which occurred in the camp.

From the personal information which is described in the PSR, it is obvious that fifteen year old Miguel was a very angry youngster whose father had been suddenly separated from the family. His mother needed to work long hours to support the family and was not available to help him through this difficult period. Miguel had no mentor at one of the most critical times in a young boy's life and easily fell prey to the gang life. This conduct, more than simply criminal conduct, was a fifteen year old's cry for help. Six points for this conduct occurring in 2003 is excessive.

**2005 - Age 17**

Miguel was released from camp on March 24, 2005. Not even a month went by before he was in trouble again. Over and over again he violated the terms of his probation. None of Miguel's encounters with the justice system during this year were scored into the criminal history category.

**2006 - Age 18**

In June 2006 Miguel was fined for fighting in public. No points were added into his score for this conduct. However, on Halloween 2006, he was arrested for drunk and reckless driving and hit and run. For this new case he was sentenced to 74 days in jail and 3 years probation. Pursuant to the Sentencing Guidelines, any jail sentence over 60 days scores two points when calculating criminal history. Hence, we add another 2 points to the 6 points which were previously assessed for a subtotal of 8 points..

**2007-2008, Age 19-20**

It seems that Miguel suffered his first felony conviction less than a year

before his arrest on this federal case. Santa Barbara Police searched his residence on July 27, 2007 and found, by some accounts a bindle and by others residue, of cocaine and a throwing star. He pled guilty of possession of a controlled substance and also a deadly weapon. A sentence of 60 days or more scores 2 points pursuant to the Sentencing Guideline formula for calculating criminal history. For this case he was sentenced to sixty days county jail and later an additional 30 days when he violated probation yet again.

In April 2008 Miguel was convicted of the charge, minor in possession of alcohol, but this case was not calculated into his criminal history score because he was given thirty days in a work program. However, in July 2008, he was again cited for driving with a suspended license. In this case he was not driving on public streets but rather was operating an ATV on the beach. He explained that he knew he had no license but he did not think that he needed a current driver's license to operate an off-road vehicle. Obviously he was mistaken and this case adds another point into his criminal history calculation, resulting in a subtotal of 11 points.

At this point in the calculation process, Miguel has racked up enough points to place him into Criminal History Category V, without ever serving more than short sentences in county jail and time in a juvenile camp. In order to finish off this calculation, two points were added in because Miguel "committed the instant offense "while under any criminal justice sentence, including probation..." and another point was added in because he committed the instant offense less than two years after release from imprisonment[4]. As discussed earlier, Miguel's first arrest

---

[4] These three points are commonly referred to as "recency points." It is anticipated that one of the two "recency sections" in USSG §4A1.1(e), will be deleted under an amendment to the Guidelines which becomes effective on November 1, 2010. When the amendment becomes effective, Miguel would be assessed two point, not three, because the "the instant offense [was committed] less than two years after release from imprisonment ." It is not known whether or not the amendment will be

9

1  (May 10, 2003) is also the relevant conduct date being used to make the criminal
2  history category calculation.  So theoretically all of Miguel's criminal conduct
3  occurred "while under [a] criminal justice sentence, including probation..."  As for
4  the additional point which attaches if the instant offense occurred less than two
5  years after release from imprisonment, the county jail sentences in 2006 and 2007,
6  activate this additional scoring.

7       Miguel's personal history explains his vulnerability to the call of the gang
8  lifestyle.  But his personal history, which is more fully discussed later, also
9  demonstrates that he is not a hardened criminal and that his criminal history
10 category, as it scored now, substantially over represents the seriousness of his
11 criminal conduct and his potential to continue to commit crimes.

12      It is respectfully requested that the Court find that Miguel Parra's Criminal
13 History Category is more appropriately calculated to be Category III.  As the
14 Commentary to USSG §4A1.1 states: "empirical research has shown that other
15 factors are correlated highly with the likelihood of recidivism, e.g. age and drug
16 abuse."  Miguel Parra's case is precisely the kind of case where his young age at
17 the time these offenses were committed in addition to his problems with drug and
18 alcohol abuse, should be factored in when determining the appropriate Criminal
19 History Category.

20 ///
21 ///
22
23 _____

24 retroactive. In Miguel's case, if this point is stricken, his amended total score of 13 points will *still* translate into Criminal History Category VI.  What really demands
25 important consideration here is that the Sentencing Commission has determined that
26 subsection (e) "does  not promote the purpose of sentencing, and in fact, has a detrimental impact on the fair administration of justice . . ." Exhibit A, News Release
27 at 2. The Commission also found that there are times when "the addition of recency
28 'points' may result in a single criminal history event having excessive weight in the determination of the applicable guideline range.

10

# III.

# THE APPROPRIATE SENTENCE

After the Court reviews the Guideline calculations it must consider the sentencing factors enunciated in 18 U.S.C. §3553. Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available.

## A. Nature And Circumstances of the Offense/History and Characteristics of the Defendant

Miguel Parra's criminal conduct and history have been discussed at length. However, a few comments which were made to defense counsel by Max Sanford, the Santa Barbara Probation Officer assigned to Miguel Parra shed a slightly different light on Miguel as an individual and confirm some of Miguel's personal background that led him to the situation he is in today. Mr. Sanford stated that he did not consider Miguel to be a problematic probationer; he made his scheduled visits to the Sanford's office and maintained employment. He also said that he did not consider Miguel to be a "hard-core" gang member, but that he was at risk for gang activity because of the neighborhood where he lived and his alcohol abuse that commenced at such an early age.

     Martin Cuevas, the father of one of Miguel's previous girlfriends, made some very illuminating comments in a letter to the Court which is attached as Exhibit "C." In addition to the fact that he worked closely with Miguel in his landscaping business, he is extremely appreciative to Miguel for the advice and encouragement Miguel gave to Mr. Cuevas' son when he seemed to be headed toward joining a gang. He credits Miguel with being a mentor to his son and keeping him out of the gang.

     Ashley Zaragoza[5] also took the time to address a very thoughtful letter to the Court and her letter is attached as Exhibit "D." In her letter she talks about how Miguel befriended her at a new school when no one else would. She remembers clearly when Miguel's father was arrested and removed from Miguel's life. She recounts the dismay she felt when Miguel became involved in the gang and how they drifted apart when she moved out of the state. Ashley returned to Santa Barbara and discovered that Miguel was in federal custody. She says she started writing to him and "rediscovered [her] best friend.

     The comments in these two letters make a person stop and think; there is a lot more to this young Miguel Parra than what we see in his criminal conduct alone.

**B.**    **Just Punishment for the Offense**

     Gangs are a scourge to our cities. So too is the use and distribution of drugs. Miguel Parra has addressed the Court regarding his future plans and those plans do not include gang activities or drugs. It is normal to be a little skeptical of a defendant who makes these claims from a prison cell where he dreams of returning to "the world outside." In Miguel's case, there are a few facts that give more weight to these statements.

     First, there is a report of a debriefing of an informant who was making

---

[5] Not to be confused with Ashley Cuevas, the daughter of Martin Cuevas.

#:3436

undercover drug buys during this investigation. When he was speaking to another gang member and trying to locate some cocaine for sale, he specifically asked about Miguel, who he referred to as "Trips." He was told that Miguel was no longer selling drugs. (Bates 2688, attached here as Exhibit "E") It was clear that Miguel was making an effort to abide by the terms of his probation, although the gang member's official explanation to the informant was that Miguel could not have any drugs at his house because he was constantly visited by law enforcement. The fact that Miguel did in fact officially curtail his activities during the period of time that he was on probation, indicates that Miguel will be amenable to supervised release and will comply with the conditions that are ordered.

Second, there is the strong recommendation from Mr. Cuevas (Letter attached as Exhibit "C") who tells us that Miguel helped keep his son out of the gangs. This is an indication that Miguel has already figured out life as a gang member is a dead-end. He is motivated to change his life. Mr. Cuevas believes that Miguel has the strength and resolve to accomplish this goal and ends with his own statement that he intends to support Miguel in his efforts.

A just punishment in this case will be a sentence that sets him on the path to a better life with the reminder that if he fails, he will be returning to prison.

## C. Adequate Deterrence

Miguel Parra has been in federal custody now for 19 months, a far cry from the short county jail sentences and camp placement of his previous experience. No doubt there are those who in a case such as this, would want to argue that Miguel deserves a severe prison sentence because the punishment he received for earlier crimes did not make a strong enough impression on him. In a case where a defendant had previously served a sentence in federal prison, this argument might have some validity. Miguel's prior jail sentences cannot compared with time in a federal adult prison. This is a serious prison experience and Miguel has been

13

living that experience for the last 19 months. To be an effective deterrent it necessarily follows that the sentence a defendant receives should not be any longer than necessary and should not be so long as to rob the individual of any hope for the future. Miguel was slowly beginning to turn his life around when he was arrested in this case. This experience has created a new sense of urgency for Miguel to make appropriate changes in his life. The knowledge that he faces additional time in federal prison if he does not comply with the conditions of supervised release be more than adequate deterrent in this case to motivate him to stay away from criminal activity.

### D.     Protect the Public

The public is protected first, by removing individuals from society who commit acts which are a danger to society and by punishing them with a prison term that will deter them from committing another crime in the future. But perhaps more importantly, when analyzing how to best protect society from future crimes that a defendant might commit, it is important to look at the age of the defendant, what he has learned from previous encounters with the justice system and what motivation, if any, he has to change the conduct that brought him to this point in his life.

Miguel Parra shows signs that he is finally maturing and realizes that he is on the verge of not only ruining his own life, but also of condemning his child to a life without a father. In his letter to the Court (attached here as Exhibit B) he states:

> MY LIFE WAS DRASTICALLY CHANGED THE FIRST WEEKS OF OCTOBER 2008, BY WHAT I FEEL ARE THE TWO EVENTS THAT WILL POSITIVELY AFFECT MY LIFE FOREVER. AND MY FIRST BABY WAS BORN AND I WAS ARRESTED BY THE FEDERAL AUTHORITIES. SIR, MY CHILD GIVES ME ALL THE REASON IN THE WORLD TO CHANGE MY LIFE FOR THE BETTER.

The case of Miguel Parra is a case where society will be best protected by setting conditions of supervised release that complement Miguel's own ambitions to turn his life around.

### E.   Provide Needed Education, Vocational Training, Medical Care and Other Correctional Treatment

18 U.S.C. §3553 also directs a sentencing court to fashion a sentence which gives priority to the need to provide a defendant with needed education, vocational training, medical care or other correctional treatment.  Unfortunately most sentences fail to give this factor much consideration.  The modern penal system offers little, if any, opportunity for education , vocational training or other treatment.  Logically, consideration of this factor is especially important in a case where the defendant is young and still maturing, as in the case of Miguel Parra.

Miguel's letter to the Court reveals that Miguel himself has already given these needs considerable thought.  He knows what kinds of things he needs to do in order to build a better life.  He states:

> MY GOALS FOR THE FUTURE ARE TO KEEP MY SOBRIETY, GO BACK TO SCHOOL AND GET MY HIGH SCHOOL DIPLOMA AND AFTER REGISTER TO A CITY COLLEGE, AND MY MOST IMPORTANT LONG TERM GOAL IS TO BE A GOOD FATHER TO MY BOY ANTHONY. I'M GOING TO DO THIS BY GOING TO A.A CLASSES AND TALKING TO MY PROBATION ON PARENTING CLASSES ALSO. I PLAN TO GO BACK TO SCHOOL TO FINISH MY CREDITS THAT I NEED TO GET MY HIGH SCHOOL DIPLOMA  AND AFTER I GET IT I PLAN ON DOING MORE RESEARCH ON A SCHOOL THAT IS IN OXNARD ABOUT CONSTRUCTION .

The Probation Officer also recognized that Miguel will require special help with his drug and alcohol problem.  She states in her report:

> Several of the defendant's prior convictions are the result of his drug and alcohol abuse. The defendant was very forthcoming about his long history of drug and alcohol abuse, which includes his near-death experience from alcohol poisoning at age 16, and addictions to

15

heroin and methamphetamine. He understands that his abuse of drugs and alcohol have contributed to his current incarceration. He further noted that he wants to be a good father. However, unless he participates in drug and alcohol treatment, he is going to make the same mistakes his father made, and miss the bulk of his son's childhood.

It is worth noting, that prior to his arrest in this case, Miguel did in fact make some positive changes in life. It appears that his addictions to both heroin and methamphetamine were and are, things of the past. Having already taken this big step on his own and realizing that he is at a turning point in his life that requires additional commitment, there is every reason to believe that Miguel can become the person he wants to be, a contributing member of society and a role model to his son.

## VII.

## CONCLUSION

It is respectfully urged that this Court calculate the Guidelines for Miguel Parra to be Level 13; it is further requested the Court make a finding that Criminal Category VI substantially over represents Miguel's criminal history and depart to Category III. The sentencing range, given these calculations, is suggested by the Guidelines Sentencing Table to be 18-24 months in custody. A sentence of 18 months and forthwith release is a sentence, given the facts of this case which is "sufficient, but not greater than necessary" to achieve the sentencing purposes set forth in Section i8 U.S.C. §3553(a). It is further requested that this Court order conditions of supervised release that will benefit Miguel in his efforts to establish himself as a productive member of society.

Dated:   May 20, 2010                                Respectfully Submitted,

                                                      /S/
                                                      Matthew J. Lombard
                                                         Attorney for Defendant
                                                      MIGUEL PARRA